NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1151
_____

ROGER B. PARKER and SALLY S. PARKER,

Appellants

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington
Mutual Bank; MORTGAGEIT, INC; INDYMAC MORTGAGE HOLDINGS, INC.;
LANCEALOTT FINANCIAL GROUP, INC.; COUNTRYWIDE HOME LOANS, INC.;
HSBC BANK USA

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
District Court No. 06-cv-02002
District Judge: Honorable Juan R. Sánchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
May 23, 2011

BEFORE:  FUENTES, FISHER, and NYGAARD, *Circuit Judges*

(Opinion Filed: October 7, 2011)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge.*

Appellants Roger and Sally Parker filed this action against their mortgage broker, Lancealott Financial Group, Inc., and various lending institutions and their assignees, alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*, as well as various state law causes of action. After a bench trial, the District Court entered judgment against the Parkers on all counts, pursuant to Rule 52(c). The Parkers now appeal both the judgment and the earlier interlocutory orders denying their motions to amend the Second Amended Complaint to add additional defendants. For the reasons that follow, we will affirm.

## I.

We write principally for the parties and therefore recite only the facts necessary for our decision. The Parkers' claims arose from the October 2005 purchase of a townhouse in West Conshohocken, Pennsylvania (the "townhouse") and the November 2005 refinancing of their residential home in Blue Bell, Pennsylvania (the "refinancing"). The Parkers used the services of a mortgage broker, Lancealott Financial Group, Inc. ("Lancealott"), to obtain mortgages for both transactions.

Approximately a month before the settlement for the townhouse, the Parkers received two separate disclosure packages—one for each of two loans—from mortgage lender Long Beach Mortgage Company ("Long Beach"). Ms. Parker testified that although she and her husband attended the settlement for the townhouse, she was unwilling to accept the financing terms presented. At the settlement meeting, Ms. Parker

2

spoke to a Washington Mutual ("WAMU") representative on the telephone and was told that she could obtain better financing terms with WAMU. The Parkers nonetheless proceeded to sign the settlement papers with the original financing terms, allegedly because Ms. Parker's broker, Jack Weinstein, of Lancealott, told her that she would have to execute the documents in the form they appeared at settlement if she wanted to get the better rates offered by WAMU. The Parkers signed documents for both loans at the settlement, believing that the terms would be revised to agree with those offered by WAMU. Despite signing for two loans, and despite Mr. Parker's handwritten note that they had "finally got[ten] [their] good faith estimate, two loans at 8.77% and 10.534%," Ms. Parker later testified that she did not know that the transactions would be financed by two loans.

Lancealott again acted as the broker for the refinancing, which was also structured as two loans from the lender, Mortgage IT. The Parkers completed loan applications for both a mortgage and a smaller home equity line of credit against their home. MortgageIT prepared disclosure packets for both loans. The Parkers ultimately assumed a total of four loans: two for the townhouse in West Conshohocken and two to refinance their residence in Blue Bell. In February 2006, however, the Parkers had their counsel write letters to the lenders requesting that the loans be rescinded. Dissatisfied by the lenders' responses, the Parkers filed suit on May 12, 2006.

The Parkers' Second Amended Complaint brought claims against Lancealott, Long Beach, WAMU, and HSBC Bank USA ("HSBC"), the current assignee of the townhouse mortgages, MortgageIT, Countrywide Home Loans, Inc. ("Countrywide") and

3

Indymac Mortgage Holdings, Inc. ("Indymac"), of which the last two were believed to be the current assignees of the refinancing loans. During the weeks prior to the start of trial, the Parkers twice sought to amend their Second Amended Complaint to add Countrywide Bank, FSB ("Countrywide Bank") as a party. Both motions were denied. After a trial, the District Court entered judgment against the Parkers on all counts under Rule 52(c). The Parkers filed a timely appeal.

## II.[1]

When determining whether to grant judgment based on partial findings after a trial under Rule 52(c), "the court does not view the evidence through a particular lens or draw inferences favorable to either party," but rather "make[s] determinations of witness credibility where appropriate." *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 272-73 (3d Cir. 2010). "We review the district court's factual findings for clear error and its legal conclusions *de novo*." *Id.* at 273. "We will not reverse if the district court's account of the evidence is plausible in light of the record viewed in its entirety even if we would have weighed that evidence differently." *Id.* (internal quotation omitted). Further, "[w]hen a trial judge's finding is based on his decision to credit the testimony of

---

[1] The District Court exercised its jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640(e), and 12 U.S.C. § 2614. It also exercised supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. However, the FDIC, as Receiver for Washington Mutual, disallowed the Parkers' claims against Washington Mutual on August 6, 2009 and through their attorney sent them notice of the disallowance that same day. Because the Parkers failed to seek administrative review of that decision or "continue [the] action commenced before the appointment of the receiver" within 60 days of that decision, we find that we lack jurisdiction as to the FDIC Receiver under 12 U.S.C. § 1821(d)(6)(B) and grant its motion to dismiss the appeal for lack of subject-matter jurisdiction.

4

one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* (internal quotation omitted).

### III.

On appeal, the Parkers first argue that they presented sufficient evidence to prove that Long Beach and MortgageIT engaged in impermissible "loan-splitting," which prevented them from "obtaining the requisite complete disclosure of the entire transaction between the parties in one set of documents." (App. Br. 20). Loan-splitting, which some courts have found to be an actionable theory under TILA, describes "the situation where the debtor wanted, requested and expected to receive a single loan, consummated in one transaction, but the lender documented and made disclosure for the loan as if it were two separate transactions." *Rendler v. Corus Bank*, 272 F.3d 992, 999 (7th Cir. 2001). We need not decide whether such a claim is actionable under TILA, however, because here the District Court made a factual finding, based on credibility determinations, as well as "the documents and [the Parkers] own notes" that "they knew a month before settlement [that] the loan would be structured as two loans." (App. 13). On this record, we cannot say that this finding that the Parkers expected to receive multiple loans was clearly erroneous.

The Parkers also contest the District Court's finding that they received the requisite disclosures under TILA. They argue that a borrower's testimony alone, if credited by the fact-finder, is sufficient to rebut the presumption that the borrower received the disclosures required under TILA §§ 1635 & 1638 and 12 C.F.R. § 226.18.

Just recently, we agreed with and adopted this position as the law in this Circuit. *See Cappuccio v. Prime Capital Funding LLC*, --- F.3d ---, 2011 WL 3584323, *8 (3d Cir. Aug. 16, 2011) ("[T]he testimony of a borrower alone is sufficient to overcome TILA's presumption of receipt."). However, here the District Court did not find the Parkers' claims "that they d[id] not remember receiving the required notices" to be credible. (App. 13) (stating that the Parkers' claims, "even if they were credible, *which they are not*" would not overcome the presumption) (emphasis added). Accordingly, because we see no basis to disturb the District Court's credibility finding that the Parkers received the requisite notices and disclosures, we will affirm its judgment as to the TILA rescission claim.[2]

The Parkers next appeal the District Court's interlocutory order denying their motions to amend the pleadings for a third time to add additional defendants. "We review a district court's refusal to allow a plaintiff to amend his complaint pursuant to Fed. R. Civ. P. 15(a) for abuse of discretion." *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001). Rule 15(a)(2) provides that when not amending as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the

---

[2] The Parkers further argue that the District Court erred by failing to consider their common law claim of rescission based on a theory of mutual mistake. Yet the Parkers based the common law rescission claim in their Second Amended Complaint entirely on a theory of fraudulent misrepresentation, not mutual mistake. (App. 54) (noting that they were entitled to rescind the loan pursuant to "common-law principles[,] as they were fraudulently induced into consummating these transactions"). Accordingly, we will not entertain their mutual mistake theory for the first time on appeal. *See Hedges v. Musco*, 204 F.3d 109, 122 (3d Cir. 2000) (noting that we will not address a claim that was not raised in the complaint unless the parties and district court were on notice of the issue and the parties addressed it on the merits).

court's leave. The court should freely give leave when justice so requires." As such, a District Court may deny a motion to amend a complaint if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). Here, it is clear from the record that the Parkers were unsure of the correct parties months before they moved to amend the Second Amended Complaint on the eve of trial. Yet there is no indication that they sought and were denied discovery as to the identity of the owner of the refinancing loan. Under these circumstances, the District Court's refusal to permit a third amendment was not an abuse of discretion.

The final issue is whether the District Court misinterpreted Pennsylvania law when it concluded that licensed mortgage brokers such as Lancealott are not covered by either the Pennsylvania Credit Services Act ("CSA") or the Pennsylvania Loan Broker Trade Practices Regulations ("LBTPR"). The LBTPR exempts any "person . . . or corporation expressly regulated by a regulatory body or officer of this Commonwealth or of the United States, such as State and nationally chartered banks, savings and loan associations and their regulated subsidiaries." 37 Pa. Code § 305.2. The District Court took judicial notice that the Pennsylvania Department of Banking lists Lancealott as a licensed mortgage broker. Because it is regulated by the Department of Banking, we agree that Lancealott falls under this exemption and is not subject to the LBTPR.

The question of whether Lancealott is exempt from the CSA is a more complicated one. We need not resolve it, however, because we agree with Lancealott

7

that the District Court's factual findings that the Parkers were aware that their loans were being split, and that they received the required disclosures, make it impossible for the Parkers to succeed on their CSA claim. In particular, the Parkers' claim that Lancealott failed to disclose the funds it received from the transaction, is undermined by the District Court's finding that the HUD-1 settlement sheet the Parkers received displayed the amount that was paid to Lancealott. (*See* App. 1156). Accordingly, we will affirm the judgment as to this claim as well.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.